## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**HEIDY A. DONDERO,**

    **Plaintiff,**

**v.**             **Case No: 6:22-cv-1203-EJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

### ORDER[1]

  This cause comes before the Court on Plaintiff's appeal of an administrative decision denying her application for Disabled Widows Benefits, alleging October 2, 2009, later amended to September 8, 2010, as the disability onset date. (Tr. 197, 209.) Initially, in a decision dated May 29, 2013, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (Tr. 17–34.) Plaintiff appealed this decision to the U.S. District Court, which remanded the case for further consideration. (Tr. 619–29.) On remand, the case was consolidated with a subsequent claim filed on September 8, 2014. (Tr. 730–32.) On October 27, 2017, the ALJ issued a partially favorable decision finding that Plaintiff was not disabled prior to August 13, 2013, but became disabled on that date. (Tr. 758–74.) The Appeals Council affirmed the finding of disability as of August 13, 2013, but remanded the case with instructions to reconsider

---

[1] On October 6, 2022, both parties consented to the exercise of jurisdiction by a magistrate judge. (Doc. 13.) The case was referred by an Order of Reference on October 11, 2022. (Doc. 16.)

the prior time period. (Tr. 784–89.) In a decision dated February 21, 2020, the ALJ found Plaintiff not disabled from September 8, 2010, through August 12, 2013. (Tr. 586–605.) Plaintiff has exhausted the available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the parties' memoranda (Docs. 19, 23, 24), and the applicable law. For the reasons stated herein, the Court affirms the Commissioner's decision.

## I.   ISSUES ON APPEAL

Plaintiff raises the following issues on appeal:

1. Whether the ALJ failed to consider Plaintiff's fluctuating symptoms in assessing Plaintiff's residual functional capacity ("RFC"), pursuant to Social Security Ruling ("SSR") 96-8p.

2. Whether the ALJ failed to properly weigh the medical opinions of record.

(*See* Doc. 19.)

## II.   STANDARD OF REVIEW

The Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however,

our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.   ANALYSIS

### A. Issue One: Whether the ALJ considered Plaintiff's fluctuating symptoms in determining her RFC.

First, Plaintiff argues that the ALJ erred in determining that Plaintiff has the RFC to perform light work with additional non-exertional limitations because "the ALJ failed to consider the Plaintiff's fluctuation of symptoms when determining the RFC[,]" as required under SSR 96-8p, 1996 WL 374184 (July 2, 1996). (Doc. 19 at 18.) The Commissioner responds that the ALJ's RFC assessment is supported by substantial evidence, "and Plaintiff failed to prove that she had additional work-related limitations." (Doc. 23 at 5–11.)

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). SSR 96-8p provides that the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" which "means 8 hours a day, for 5 days a week, or an equivalent work schedule." 1996 WL 374184, at *1; *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (stating that the RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments"). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 404.1546(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of the treating, examining, and non-examining medical sources.

20 C.F.R. § 404.1545(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012) ("Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.").

Here, substantial evidence supports the ALJ's RFC determination. The ALJ acknowledged Plaintiff's testimony that "she needed to change position regularly to achieve relief from pain[,] . . . [and] that she c[ould not] sit more than twenty minutes, stand more than fifteen minutes, walk more than fifteen minutes or lift more than eight pounds[,]" consistent with an RFC of less than sedentary work. (Tr. 597; *see also* Tr. 1030.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record during the period at issue." (Tr. 597.) Rather, "the evidence prior to August 13, 2013 indicate[d] intact capacities for light work, subject to additional, nonexertional limitations." (*Id.*) In so finding, the ALJ provided a detailed RFC analysis, discussing objective medical evidence, Plaintiff's activities of daily living, and medical opinions.

First, the ALJ considered diagnostic imaging that Plaintiff underwent in September 2010. (Tr. 598.) A cervical spine MRI revealed "degenerative changes at C5-6 resulting in mild central stenosis and a tiny central disc protrusion at C4-5 and C6-7[,]" and cervical spine X-rays "showed reversal of the normal lordotic curve and narrowing at C5-6 with posterior osteophytic spurring." (Tr. 401, 404, 442, 447, 598.) Lumbar spine MRIs revealed "mild multilevel disc bulging, and X-rays also reflect[ed]

disc space narrowing at L5-S1 with anterior bridging osteophytes." (Tr. 402–03, 445, 448, 598.) The ALJ considered EMG and nerve conduction studies performed on both legs, which "indicated chronic L5-S1 radiculopathy secondary to these degenerative changes." (Tr. 417, 598.) Based upon these studies, the ALJ concluded that Plaintiff "suffered a degree of cervical and lumbar spine pain at the alleged onset, as well as radicular symptoms in the lower extremities." (Tr. 598.)

The ALJ further considered diagnostic imaging of the extremities, including left shoulder X-rays showing "down sloping of the acromion and a low-riding humeral head, indicative of potential instability and nerve impingement." (Tr. 455, 598.) The ALJ noted that knee imaging was more benign with well maintained "[r]etropatellar spaces and femorotibial spaces" bilaterally, although "her consultative exam did produce signs of 'mild' chondromalacia approximately one year later, in late September 2011." (Tr. 455, 544, 598.) The ALJ found the evidence tended "to confirm that [Plaintiff] struggled with deficits in the left upper extremity and right knee to some extent." (Tr. 598.)

The ALJ considered physical examination findings from prior to August 13, 2013, when the ALJ found that Plaintiff "established disability . . . due to the aggravating effects of a motor vehicle accident." (Tr. 592, 598.) In May 2011, Homi S. Cooper, M.D., performed a consultative examination for Vocational Rehabilitation. (Tr. 453–57, 599.) The physical examination revealed that Plaintiff "achieved full range of motion in regions of the spine without producing signs of muscle spasm[,] . . . [and] manifested full strength and range of motion in all

extremities alongside signs of normal muscle tone, normal grip strength and intact sensory response." (Tr. 454–55, 599.) Plaintiff "was also able to maintain a normal gait, and perform normally on heel-shin testing, tandem gait testing, and rapid alternative hand and finger movements." (Tr. 455, 599.) The ALJ found "[t]his evidence strongly conflict[ed]" with Plaintiff's testimony that she "c[ould not] sit more than twenty minutes, stand more than fifteen minutes, walk more than fifteen minutes or lift more than eight pounds." (Tr. 599.)

Similarly, a September 2011 consultative examination conducted by Joseph J. Mignogna, M.D., revealed "generally intact range of motion in the cervical spine, lumbar spine, shoulders, elbows, wrists, hips, knees and ankles." (Tr. 540–44, 599.) The ALJ recognized that "[t]here were some modest deficits in lateral bending and extension of the lumbosacral spine and mild crepitus in the right knee, but [Plaintiff] was still able to bend forward without difficulty to retrieve a folder off the floor." (Tr. 543, 599.) Moreover, "[g]ait findings were normal in all respects, and her exam was largely unremarkable for postural deficits, save for some 'awkward' squatting." (Tr. 543–44, 599.)

The ALJ considered Plaintiff's fluctuating symptoms, acknowledging that "[b]etween 2012 and August 13, 2013, [Plaintiff] periodically manifested signs of musculoskeletal dysfunction." (Tr. 599.) For instance, "[a] November 2012 annual physical showed evidence of unspecified joint tenderness and tenderness around the L5-S1 region." (Tr. 571–72, 599.) However, straight leg raise testing was negative. (Tr. 572, 599.) The ALJ also noted that in July 2013, there were "isolated signs of right

knee tenderness and decreased range of motion in the cervical and lumbar spine, together with impaired overhead reaching due to pain and muscle tension." (Tr. 599, 1048.) But in January 2013, Plaintiff denied weakness, numbness, or tingling secondary to her conditions. (Tr. 560, 599.) The ALJ concluded that Plaintiff's signs of musculoskeletal dysfunction "[did] not appear with regularity over the period at issue." (Tr. 599.)

The ALJ considered Plaintiff's activities of daily living, noting that Plaintiff "reported the ability to bathe, dress herself, clean the house, grocery shop, wash laundry, cook, drive and use a computer." (Tr. 541, 599–600.) The ALJ found these activities that "require a significant amount of walking, standing, sitting, lifting and postural maneuvers" to be incompatible with Plaintiff's "reported inability to perform less than sedentary exertional demands." (Tr. 600.) The ALJ also noted that Plaintiff's ability to perform home exercises during her recommended course of physical therapy was more consistent with an exertional level of light work. (Tr. 437, 600.)

Finally, the ALJ considered the medical opinions of record. For instance, the ALJ considered and assigned "partial weight" to Dr. Mignogna's September 2011 opinion that Plaintiff had no restrictions standing, walking, or sitting, did not require an assistive device, could occasionally perform light lifting and carrying, and occasionally squat, kneel, crawl, and climb. (Tr. 544, 601–02). In support, the ALJ cited Dr. Mignogna's findings "of grossly normal motor and reflex function, muscle strength and lumbar range of motion." (Tr. 542–43, 602.) The ALJ found the signs of "awkward" squatting "sufficient to infer [Plaintiff] was limited to occasional postural

functions involving the lower extremities." (Tr. 544, 602.) However, the ALJ did not adopt the occasional light lifting and carrying limitations "due to the signs of intact strength in the upper extremities." (Tr. 542, 602.) Rather, the ALJ noted that limiting Plaintiff to occasional overhead reaching and frequent reaching in all other directions adequately accounted for Plaintiff's neck and shoulder pain. (Tr. 602, 1048.)

The ALJ considered and assigned "partial weight" to the opinion of the State agency reviewing physician Dr. Bettye Stanley, D.O., who opined that Plaintiff was limited to light work and could stand, walk, and sit for a total of six hours in an eight-hour workday. (Tr. 130–32, 602.) Dr. Stanley opined additional environmental and postural limitations, including that Plaintiff could frequently climb ramps and stairs, balance, kneel, and crouch, but only occasionally climb ladders, ropes, or scaffolds and crawl. (Tr. 131–33.) The ALJ found the standing, walking, sitting, lifting, and carrying limitations consistent with "the evidence of intact strength and grossly intact range of motion displayed in the consultative exam as well as [Plaintiff's] vocational rehabilitation assessment." (Tr. 602.) However, the ALJ limited Plaintiff "to occasional postural limitations across the board," consistent with Dr. Mignogna's opinion. (Tr. 602.) As will be discussed in the next section, the ALJ considered additional medical opinions of record, but assigned them no weight to the extent they were not supported by the evidence or did not relate back to the relevant period.

In sum, the ALJ considered all of the evidence of record and assessed Plaintiff's RFC in a manner that she found consistent with this evidence.

Plaintiff relies upon two Eleventh Circuit cases, *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021), and *Tavarez v. Commmissioner of Social Security*, 638 F. App'x 841 (11th Cir. 2016),[2] to argue that the ALJ should have explicitly considered Plaintiff's fluctuating symptoms in evaluating her RFC. (*See* Docs. 19, 24.)

As an initial matter, the ALJ's finding that Plaintiff can perform "light work" as defined in 20 C.F.R. § 404.1567(b) implicitly encompassed the requirement that Plaintiff was capable of working on a regular and continuing basis. *See, e.g.*, *J.P. v. Comm'r of Soc. Sec. Admin.*, No. 1:20-cv-12-LAG-TQL, 2021 WL 1894146, at *3 (M.D. Ga. Mar. 19, 2021) ("Courts once wrestled with whether ALJs should make explicit findings on this issue, but it is well 'settled now that reviewing courts generally assume that administrative [RFC] assessments include *implicit* findings of ability to work on a regular and continuing basis.'") (citation omitted and emphasis in original); *see also Chiappini v. Comm'r of Soc. Sec.*, 737 F. App'x 525, 528 (11th Cir. 2018) (finding the ALJ's step five conclusion that the plaintiff was not disabled implied that the plaintiff was able to work a regular work day and week).

Furthermore, as discussed above, the ALJ acknowledged Plaintiff's fluctuating symptoms. The ALJ also accounted for them in the RFC, specifically noting that although the evidence supported a light level of exertion, additional nonexertional

---

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

restrictions were warranted "[g]iven [Plaintiff's] problems with the right knee and isolated evidence of reduced range of motion in the lumbar spine." (*See* Tr. 600.)

Additionally, Plaintiff relies on factually inapposite cases. *Simon* was decided in the context of mental impairments, which, as the Eleventh Circuit recognized, "are characterized by the unpredictable fluctuation of their symptoms." *Simon*, 7 F.4th at 1106. By contrast, here, Plaintiff does not challenge the ALJ's evaluation of Plaintiff's mental impairments on this basis. In *Tavares*, the ALJ discounted a treating physician's opinion partly because it was inconsistent with the plaintiff's testimony that her symptoms fluctuated. The court found the ALJ's reason did not constitute "good cause," where "[the physician's] opinion reflect[ed] that his assessment was made with the understanding that [the plaintiff's] symptoms did fluctuate." *See Tavarez*, 638 F. App'x at 848 ("The ALJ did not elaborate on what he found to be inconsistent. Without more, we cannot conclude that this reason provides good cause to discount [the physician's] assessment."); *see also Bentley v. Comm'r of Soc. Sec.*, No. 6:21-cv-226-DCI, 2022 WL 1553425, at *3 (M.D. Fla. May 17, 2022) (distinguishing *Tavarez* because "[h]ere, the ALJ did not rely upon Claimant's fluctuating symptoms in finding [the physician's] opinion unpersuasive"). Here, the ALJ considered Plaintiff's fluctuating symptoms when assessing her RFC and properly accounted for them. And to the extent the ALJ discounted medical opinions, she gave clear and cogent reasons, supported by substantial evidence.

Finally, Plaintiff fails to point to evidence showing that her impairments fluctuated to such an extent as to preclude employment. Plaintiff's arguments on this

point essentially ask the Court to reweigh the evidence of record, which is not the Court's function on review. When the record supports multiple readings, and the ALJ's chosen reading is a permissible one, the Court should affirm; this is true even if the ALJ's chosen reading is preponderated against by a contrary reading. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). Accordingly, the Court finds no reversible error in the ALJ's RFC assessment.

## B. Issue Two: Whether the ALJ properly evaluated the medical opinions.

Second, Plaintiff challenges the ALJ's assessment of the medical opinions of (1) treating physician David Magness, D.O.; (2) treating neurologist Gary Weiss, M.D.; and (3) consultative examining physician Dr. Cooper. (Doc. 19 at 21–29.) The Court will consider each of the disputed medical opinions in turn.

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel*, 631 F.3d at 1178–79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).[3] The ALJ must consider a number of factors in

---

[3] The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because

determining how much weight to give each medical opinion, including: (1) whether the physician has examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. 20 C.F.R. § 404.1527(c).

"The ALJ must give a treating physician's opinion 'substantial or considerable weight unless good cause is shown to the contrary.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (citing *Phillips*, 357 F.3d at 1240). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Id.* (citing *Winschel*, 631 F.3d at 1179).

### 1. Dr. Magness

On December 13, 2012, Plaintiff's treating physician, Dr. Magness, completed a disabled person parking permit application on Plaintiff's behalf. (Tr. 559.) He checked a box authorizing a permanent permit due to Plaintiff's "arthritic, neurological, or orthopedic condition" limiting or impairing her ability to walk 200 feet without stopping to rest. (Tr. 559.) Additionally, in a letter dated July 16, 2013, Dr. Magness indicated that Plaintiff was unable to work due to her chronic medical issues. (Tr. 1054.)

---

Plaintiff filed her application before March 27, 2017, the revised regulations do not apply to her claim.

The ALJ considered both opinions and stated:

> Dr. Magness signed an application for a disabled parking permit, indicating that the claimant had a severe limitation in her ability to walk due to an "arthritic, neurological or orthopedic condition" that limited the claimant to walk 200 feet before requiring rest. (Ex. 16F). While this opinion clearly suggests substantial walking limitation, it does not specify which of the purported conditions were responsible for the limitation. (Ex. 16F). Nor did Dr. Magnus [sic] append clinical assessments that show persistent gait deficits in support of this application. (Ex. 16F). Thus, his reasoning appears vague and poorly supported by objective medical evidence. More importantly, the endorsed walking limitation is simply inconsistent with signs of intact lower extremity strength, normal gait and grossly normal spirometry results produced during the period at issue. (Ex. 9F, 12F). The deficits in function that periodically appear in the record are not consistent enough to support such a severe restriction. Therefore, Dr. Magness's opinion at Exhibit 16F was given no weight.

> Dr. Magness also provided a brief letter that states that claimant was unable to work due to chronic medical issues. (Ex. 19F). Similar to the claimant's parking permit application, this letter cites no objective clinical findings to support this position. (Ex. 19F). Moreover, the letter purports to make an ultimate determination on the issue of disability, which is a question reserved for the Commissioner. As such, this letter was accorded no weight. (Ex. 19F).

(Tr. 600–01.) Substantial evidence supports the ALJ's decision to assign Dr. Magness's opinions "no weight." As an initial matter, the ALJ properly rejected Dr. Magness's July 16, 2013 statement that Plaintiff was unable to work, as this is a dispositive issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)–(3), (noting that statements by a medical source that a claimant is "disabled" or "unable to work" are opinions on issues reserved to the Commissioner and will not be given any special

significance); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("[T]he Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled.") (citations omitted); *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]").

As to Dr. Magness's opined limitations on Plaintiff's disabled parking permit application, the ALJ properly considered them and articulated "good cause" for according them "no weight." First, to the extent the form concludes that Plaintiff is "disabled," as noted above, the determination of disability is reserved to the Commissioner, and therefore, the conclusion is not entitled to any special significance. Second, the ALJ properly discounted Dr. Magness's opined limitations on the basis that they were vague and "poorly supported by objective medical evidence." (Tr. 600.) The document consists of a prepared, check-the-box form provided by the Florida Department of Highway Safety and Motor Vehicles, and, as the ALJ noted, "Dr. Magnus [sic] [did not] append clinical assessments that show persistent gait deficits in support of this application." *See Crawford*, 363 F.3d at 1159 ("A treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.") (citation and internal quotations omitted);

*Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (finding the ALJ had good cause to not give controlling weight to the treating physician's opinions partly because the opinions were conclusory and reported on forms that did not reference treatment records or provide adequate explanations); *Perez v. Comm'r of Soc. Sec.*, No. 6:22-cv-710-RBD-KCD, 2023 WL 3235244, at *3 (M.D. Fla. Apr. 18, 2023), *report and recommendation adopted*, 2023 WL 3225060 (M.D. Fla. May 3, 2023) ("When a doctor merely completes forms regarding a patient's limitations without referencing anything more, as here, an ALJ may decide the opinions are not entitled to controlling weight" (citations omitted).)

Third, and more importantly, the ALJ properly rejected Dr. Magness's opined limitations on the basis that they were inconsistent with the medical record, which revealed "signs of intact lower extremity strength, normal gait and grossly normal spirometry results." (Tr. 600.) While the record at times revealed deficits, the ALJ found those were "not consistent enough to support" Dr. Magness's opined restrictions. (Tr. 600.)

Thus, the ALJ showed "good cause" and properly articulated reasons, supported by substantial evidence, for affording Dr. Magness's opinions "no weight." *See* 20 C.F.R. § 416.927(c)(2).

Plaintiff argues that Dr. Magness's opinion was "well supported by treatment notes" and points to medical evidence that purportedly supports his opinion. (Doc. 19 at 23–24.) For instance, Plaintiff points to Dr. Magness's November 2012 and July 2013 observations, which included joint tenderness, decreased range of motion,

limping, and knee pain. (*Id.* at 23–24 (citing Tr. 571–72, 1048).) The ALJ acknowledged these findings in her decision, but noted that "these signs d[id] not appear with regularity over the period at issue." (Tr. 599.) The ALJ cited Dr. Magness's January 2013 treatment notes, when Plaintiff denied "weakness, numbness or tingling secondary to her conditions." (Tr. 599, 560, 1167.) She was also found to be in no acute distress, and she reported that her pain was stable and had not worsened. (Tr. 560.) Although, in July 2013, Plaintiff endorsed "chronic weakness and tinging [sic] down both of her arms" (*see* Tr. 1048), only a month earlier she was found in no acute distress, and she denied weakness, numbness, or tingling. (*See* Tr. 1050; *see also* Tr. 1160, 1163.) Moreover, the ALJ noted that although the November 2012 examination revealed signs of unspecified joint and spinal tenderness, straight leg raise testing was negative bilaterally. (Tr. 599, 572.)

In support of Dr. Magness's opinion, Plaintiff also points to Dr. Cooper's May 2011 "diagnosis of low back pain with bilateral radiculopathy and right knee pain" and Dr. Mignogna's September 2011 examination suggestive of mid-low lumbar radiculopathy. (Doc. 19 at 25–27.) As noted *supra*, the ALJ thoroughly discussed Dr. Cooper's and Dr. Mignogna's evaluations. (Tr. 599.) Plaintiff had full range of motion of the cervical, thoracic, and lumbosacral spines, and of the shoulders, elbows, wrists, hips, knees, and ankles. (Tr. 454–55, 543, 599.) She also had a normal gait and stance. (Tr. 455, 542–43, 599.) To the extent Plaintiff relies on diagnoses of low back pain with bilateral radiculopathy and right knee pain, diagnoses alone do not establish functional limitations. As the Eleventh Circuit explained, "the mere existence of these

impairments does not reveal the extent to which they limit [the plaintiff's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")). The ALJ acknowledged Plaintiff's back disease and mild knee chondromalacia, considered their limiting effects based on the record evidence, and accounted for them in the RFC assessment by restricting Plaintiff to light work with additional nonexertional limitations. (Tr. 596.) Nothing more was required.

Again, Plaintiff is essentially arguing that the evidence supports a different conclusion. But where there is conflicting evidence in the record, it is the ALJ's responsibility to weigh the evidence. *See Leslie v. Comm'r, Soc. Sec. Admin.*, No. 22-10676, 2022 WL 4476661, at *4 (11th Cir. Sept. 27, 2022) ("By weighing conflicting [medical] evidence, the ALJ stayed within his role."). And as long as "the Commissioner's decision is supported by substantial evidence [this Court] must affirm, even if the proof preponderates against it." *Zoslow v. Comm'r of Soc. Sec.*, 778 F. App'x 762, 764 (11th Cir. 2019) (internal citations and quotations omitted).

Accordingly, the ALJ acted in accordance with her responsibility, weighing the evidence, and proffering clear and cogent reasons, supported by substantial evidence, for rejecting Dr. Magness's medical opinions. *See Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 F. App'x 438, 440 (11th Cir. 2011) ("As our limited review precludes us from reweighing the evidence, we will find no reversible error when the ALJ has articulated specific reasons for failing to give the opinion of a treating physician controlling weight, if those reasons are supported by substantial evidence.").

### 2. Dr. Weiss and Dr. Cooper

On November 4, 2016, Plaintiff's treating neurologist, Dr. Weiss, completed a Physical Restrictions Evaluation on Plaintiff's behalf, for the time period beginning April 1, 2012. (Tr. 1437–40.) He opined, inter alia, that Plaintiff could sit for a maximum of fifteen to thirty minutes, stand and/or walk for five to ten minutes, and in an eight-hour day could sit and stand for a total of two hours maximum and would need to lie down/recline for four hours. (Tr. 1437.) Dr. Weiss also opined that Plaintiff could never climb, balance, stoop, crouch, kneel or crawl. (Tr. 1438.) In support of his opinion, Dr. Weiss stated that Plaintiff had a left foot drop and chronic low back pain, post emergent surgery. (Tr. 1437.)

On November 17, 2016, consultative examining physician, Dr. Cooper, completed a physical functional capacity form at the request of the Division of Disability Determination. (Tr. 1423–36.) He opined that Plaintiff could stand and walk for two to three hours and sit for four to five hours out of an eight-hour day. (Tr. 1425, 1435.) He indicated that Plaintiff used a medically necessary cane, left ankle/foot

orthosis, and a right ankle support. (Tr. 1425, 1436.) She could lift and carry up to ten pounds frequently and eleven to twenty pounds occasionally, could occasionally climb stairs and ramps, bend, stoop, crouch, crawl, and climb, and never climb ladders or scaffolds. (Tr. 1424, 1427, 1436.)

The ALJ considered both opinions, and stated:

> Gary Weiss, M.D. and Homi Cooper, M.D. provided opinions on residual function in 2016. (Ex. 36F, 37F). Dr. Weiss's opinion clearly relates back to the claimant's condition during the period at issue, as it purports to address functional abilities as early as 2012. (Ex. 37F). Dr. Cooper's assessment is less clear on the applicable time frame, but for purposes of this analysis it will be assumed this opinion also purports to address function during the period at issue. (Ex. 36F).
>
> However, these opinions were given no weight, insofar as they relate to function during the period at issue. (Ex. 36F, 37F). Dr. Weiss did not have an opportunity to evaluate the claimant prior to the August 13, 2013 motor vehicle accident. Thus, all of his own clinical assessments implicitly reflect the decline in function caused by this accident, rather that [sic] the claimant's condition during the period at issue. (Ex. 37F). It [sic] also patently obvious from the support laid out in both opinions that the claimant's accident played a significant role in Dr. Weiss and Dr. Cooper's functional assessments. To wit, they both cite a 2014 surgical discectomy that was precipitated by the August 13, 2013 accident, as well as signs of left foot drop that clearly do not appear in the record prior to August 13, 2013. (Ex. 36F, 37F). As such, these opinion [sic] were accorded no weight insofar as they relate to the period at issue. (*See, e.g.* Ex. 36F, 37F).

(Tr. 602.) The ALJ properly discounted Dr. Weiss's and Dr. Cooper's opinions as they concerned the relevant period prior to Plaintiff's August 13, 2013, motor vehicle accident.

Dr. Weiss began treating Plaintiff in September 2014, after her August 2013 accident. (Tr. 1201.) And although he indicated that his opinion related back to April 2012, Dr. Weiss cited Plaintiff's left foot drop and March 2014 back surgery as a basis for his opined limitations. (Tr. 1437.) However, Plaintiff testified that the August 2013 "accident gave [her] drop foot where [she] [could not] lift [her] left foot and walk properly anymore." (Tr. 645–46; *see also* Tr. 695.) Dr. Weiss's September 2014 treatment notes similarly confirm that Plaintiff "had left droop foot since [the March 2014] surgery" (Tr. 1201, 1447; *see also* Tr. 1315 (new onset foot drop reported after the August 13, 2013 car accident).)

In support of his opinion, Dr. Cooper reviewed Dr. Weiss's notes, showing Plaintiff "ha[d] chronic low back pain status post emergent surgery L4-5 for new foot drop 03-2014, which did not help." (Tr. 1431; *see also* Tr. 1424.) Notably, both Dr. Weiss and Dr. Cooper opined that Plaintiff needed a cane for stability. (Tr. 1426, 1436, 1438.) However, prior to Plaintiff's August 2013 accident, Dr. Cooper found that Plaintiff walked well on her heels and her toes, had a normal gait and stance, with normal tandem gait, and no disequilibrium noted. (Tr. 455.) And in September 2011, Dr. Mignogna indicated that Plaintiff had normal tandem walk, toe and heel walk, and heel to toe walk and did not require an assistive device. (Tr. 543.)

Moreover, an initial evaluation from Advanced Interventional Pain Clinic, where Plaintiff presented in November 2013 with complaints of "neck pain, pain in her joints, lower back pain radiating to left hip, right knee pain, and numbness in the left lower extremity[,]" shows that Plaintiff "report[ed] this pain began following

motor vehicle accident that occurred on August 13, 2013." (Tr. 1123.) Plaintiff additionally stated that "prior to this accident she was not having pain such as she has now." (Tr. 1123.)

Thus, the record confirms the ALJ's finding that Dr. Weiss's and Dr. Cooper's 2016 opinions reflected Plaintiff's condition after her 2013 car accident, which resulted in a deterioration of her condition. Accordingly, the ALJ did not err in affording both opinions "no weight."

## IV.   CONCLUSION

Upon consideration of the foregoing, it is **ORDERED** that:

1.   The Commissioner's final decision in this case is **AFFIRMED**; and

2.   The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on July 17, 2023.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE